CLARICE TSATSOS *vs.* BOSTON, REVERE BEACH AND LYNN RAILROAD COMPANY.

Suffolk. April 3, 1929. — May 31, 1929.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Negligence*, Railroad.

At the trial of an action of tort against a railroad corporation, there was evidence that, as one of the defendant's trains approached the terminal station, which was located at the edge of a body of water, its speed was "very fast"; that it did not slacken speed; that the whistle shrieked and there was "an awful grating noise"; that the train did not stop until it reached a point about thirty feet from the water, quite a way beyond its usual stopping place; and that the plaintiff, a passenger on the train, being afraid that it was going into the water, jumped off with other passengers while it was moving and was injured. There was no evidence of the surrounding circumstances as the train approached the station, and no specific evidence as to how far beyond its usual stopping place the train came to a stop. *Held*, that the plaintiff could not recover: the evidence did not warrant a finding that the defendant was negligent.

TORT. Writ dated December 27, 1926.

Material evidence at the trial in the Superior Court before *Whiting*, J., is stated in the opinion. The defendant rested at the close of the evidence for the plaintiff. Subject to leave reserved under G. L. c. 231, § 120, a verdict for the plaintiff in the sum of $300 was recorded. Thereafter the judge ordered the entry of a verdict for the defendant. The plaintiff alleged exceptions.

*H. Goldkrand*, for the plaintiff.

*L. Wheeler, Jr.*, for the defendant.

CROSBY, J. This is an action to recover for personal injuries, received by the plaintiff as the result of jumping from

a train of the defendant, on which she was a passenger, to the station platform at its East Boston Terminal.

The plaintiff testified, and there was other evidence to the same effect, that after the train passed through the tunnel and approached the station it did not slow up; that the speed of the train on going through the tunnel was "very fast"; that when it did not stop as it came into the shed every one got up and the train whistle "hollered and shrieked"; that the plaintiff got up with others and jumped off while the train was moving, because she was afraid she was going into the water; that the train did not stop at the regular stopping place, but did stop a short distance after it was through the shed; that the usual stopping place was inside the shed; that every one was excited and hollering and pushing toward the door to get out.

A witness called by the plaintiff, who also was a passenger on the train, testified in substance that as the train went through the tunnel there was "an awful grating noise"; that the train did not slow down as it came into the station; that it came into the station at a good rate of speed; that at that time the whistle of the engine made a loud noise; that the train did not stop until it reached a point quite a way beyond the usual stopping place, and when it was about thirty feet from the water; that it went much faster than the customary rate of speed and slowed down very little as it was entering the shed.

There was no evidence that the speed of the train was excessive. The testimony that it was "very fast," "at a good rate," faster than the "usual and customary rate of speed," furnishes no evidence that the speed was excessive, nor does it warrant a finding of negligence of the defendant in the operation of the train. *Foley* v. *Boston & Maine Railroad*, 193 Mass. 332, 335. *Anderson* v. *Boston Elevated Railway*, 220 Mass. 28, 30. *Selibedea* v. *Worcester Consolidated Street Railway*, 223 Mass. 76. *Walsh* v. *Boston Elevated Railway*, 256 Mass. 17, 18. *Chandler* v. *Boston Elevated Railway*, 261 Mass. 230.

The testimony that the train whistle "hollered and shrieked" and as to other graphic descriptions of the sounds

emitted therefrom, and that it was sounded for a long time, is insufficient to warrant a finding that the noise of the whistle was excessive and unreasonable. There was no evidence as to the circumstances existing as the train emerged from the tunnel and approached the station; it could not properly be found to be an act of negligence to give warning to other trains or to persons who might be crossing the tracks at the time of its approach. The testimony that as the train passed through the tunnel there was an "awful grating noise" or sound would not warrant a finding that the brakes were defective or applied in an unusual or negligent manner. The fact that the train came to a stop at a point beyond the usual stopping place falls far short of showing negligence; there was no specific evidence as to the distance beyond the usual stopping place the train came to a stop. It may be regarded as common knowledge that trains do not always stop at precisely the same place at stations for passengers to board or alight from them. There was evidence that the train stopped a short distance from the water, about thirty feet therefrom; but an entire absence of evidence as to how far the water was from the usual stopping place. It does not appear that the train was not stopped at a place within its terminal provided for that purpose and suitable for passengers alighting from trains.

It follows that, as there was no evidence to warrant a finding of negligence on the part of the defendant, it is unnecessary to consider whether the plaintiff was in the exercise of due care in jumping from the train. The cases cited by the plaintiff are not pertinent to the evidence in the case at bar. The trial judge rightly directed a verdict for the defendant.

*Exceptions overruled.*