Wheatley, PJ.
After repossession and sale of machinery under a lease in default the plaintiff-lessee (“Muldoon”) sought to recover from the corporate defen *47 dant-lessor (“LaChance”) an overage. Muldoon appeals from summary judgment in favor of LaChance pursuant to Dist/Mun. Cts. RADA, Rule 8C. We affirm.
The facts as set out by the trial judge as being undisputed for the purposes of the consideration of a motion for summary judgment follow.[3] On May 5,1994, Muldoon entered into a lease agreement (“the lease”) with LaChance for a 35-ton press brake. The lease called for thirty-six monthly payments of $458.25, for a total of $16,497[4] due LaChance, and was secured by a $5,000 deposit which Muldoon paid as required. The purchase price of the press brake, and the amount being financed under the lease, was $11,750. An addendum to the lease provided that Muldoon would purchase the leased equipment for $1,175.00 “upon expiration of the initial lease term [36 months].” Muldoon, in his individual capacity, also guaranteed to LaChance all payments of money due under the lease in the event of default
Between May 1994 and May 1995, Muldoon made thirteen payments of $458.25, totaling $5,957.25. During May and June, 1995, Muldoon ceased operations and defaulted on the lease. Whereupon his landlord seized all of the company’s assets, including the leased press brake. Muldoon made no further payments to LaChance after May, 1995. At the time of default, twenty-three payments of $458.25 and one payment of $1,175 were left payable under the lease. In January, 1996, Muldoon’s landlord released the equipment to LaChance, who repossessed it on or about January 19, 1996. Shortly thereafter LaChance sold the press brake to Oxford Machinery Co. for $9,250, less $2,227 (the cost of moving and storing the equipment), leaving $7,023 as the net sale proceeds. At the time of the sale, eight more lease payments of $458.25 had come due under the lease, for the period between the default date and the sale date, and were outstanding; another fifteen had not yet come due. The method of sale was described in undisputed affidavits submitted by LaChance.
Muldoon’s complaint, inter alia, alleges breach of contract and a violation of G.Lc. 93A by virtue of the defendant not having returned “the amount overpaid on [the] lease agreement” He cited in his brief as issues on appeal the following: whether the trial court should have held an evidence hearing on whether a surplus was owed to Muldoon; whether the sale was commercially reasonable; whether the trial judge should have denied Muldoon’s motion to amend his complaint; and, whether the trial judge should have held the case for a trial on the 93A claim.
“Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as matter of law.” Ruane v. Jancsics, 2001 Mass. App. Div. 103 (2001), Bergendahl v. Massachusetts Electric Company, 45 Mass. App. Ct. 715 (1998) at 718. The documents to be examined by the motion judge are "... pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.” Mass. R. Civ. P., Rule 56(c). We may consider any ground supporting the judgment Champagne v. Commissioner of Corrections, 395 Mass. 382, 386 (1985).
1. The evidence hearing. Muldoon claimed that after the repossession and the distress sale, LaChance owed him some of the proceeds. He points to the trial judge’s memoranda in response to LaChance’s two motions for summary judgment In the first memorandum, the judge allowed summary judgment on several specific issues,[5] and denied summary judgment regarding service and delin *48 quency charges “because there remain genuine issues of material fact.”[6]
However, in the trial judge’s memorandum on the second motion for summary judgment, wherein he ruled on the issues of the commercial reasonableness of the distress sale and LaChance’s entitlement to any attorney’s fees, the judge stated, “[t]hese [are] the only issues remaining in the case after the Court granted partial summary judgment in [the prior memorandum and order],” and ordered final judgment for LaChance. The statements in the two memoranda are manifestly inconsistent, and Muldoon was entitled to have this cleared up. When the trial judge made his ruling on the second motion, he may have forgotten his prior exception. However, he was not irrevocably bound by his earlier ruling and “was at liberty to rule or find differently down to the time of his final decision.” Raytheon Manuf. Co. v. Indemnity Ins. Co., 333 Mass. 746, 749 (1956). If Muldoon wanted to insist on his right to a hearing as to the service and delinquency charges, it was incumbent upon him, on receipt of the second memorandum, to bring the inconsistency to the trial judge’s attention by a motion to correct or remedy the error, not to wait to pull the trigger on appeal. “In such situations the law affords a remedy. It has been settled by numerous decisions that where there is an inconsistency ... the remedy is either a motion to correct the inconsistency or a motion for a new trial.” Id., supra. See also, The McLean Hospital Corp. v. Rumage, 1985 Mass. App. Div. 135 (1985); Shoulders v. Commonwealth of Mass., 1984 Mass. App. Div. 66, 69 (1984); Aliberti v. Acton Concord Chevrolet, Inc., 83 Mass. App. Div. 95, 97 (1983). Compare Shafir v. Steele, 431 Mass. 365, 371 (2000) (appellate court not required to hear question of adequacy of damages where not raised first before the trial judge). This was not done, and it is not now an issue that we will consider.
2. Commercial reasonableness. The issue of commercial reasonableness, may properly be a matter for summary judgment Federal Deposit Ins. Corp. v. Air Atlantic, Inc., 389 Mass. 950, 956-957 (1983); Shawmut Worcester County Bank N.A. v. Miller, 398 Mass. 273, 282 (1986). The record shows that Muldoon himself participated in the selection of the person to sell the collateral. The person chosen had sold similar equipment over a twenty-year period, and used the same method each time, viz. contacting potential buyers with whom he was familiar and with whom he had done business in the past Before effecting the sale, Muldoon’s sister, with whom he was in contact, was contacted and told the price and various repossession costs, and no complaint was registered.
Muldoon cited no facts nor filed any affidavits which would indicate that the sale was not conducted in a commercially reasonable manner. Once the moving parly has presented an affidavit in support of his motion, merely asserting that the sale was not conducted in a commercially reasonable manner is not sufficient to oppose the motion or raise a genuine issue of material feet Compare the Shawmut Worcester County Bank N.A. case, supra. The sale was governed by G.L.c. 106, §§9-504 and 9-507(2) and, was, as the trial judge found, done in a commercially reasonable manner.
3 Motion of amend. Muldoon at one point filed a motion “for leave to amend complaint to add a new count and remove to Superior Court,” which requests leave to add a count VI alleging usury on the part of LaChance in violation of G.L.c. 271, §49, a criminal statute. Paragraph (c) of that section authorizes the Superior Court and Supreme Judicial Court to declare void any usurious loan. Neither Muldoon’s motion nor his proposed new count VI requests that the court declare LaChance’s loan void. A civil complaint can not be used to determine the guilt or innocence of a defendant under a criminal statute. Even assuming that Muldoon intended to include that request in his new count, LaChance responded *49 that it had properly notified the Attorney General in this regard, under G.Lc. 271, §49, of its intentions regarding interest rates in the statutorily directed format (an exception recognized under the statute, para, (d)), which Muldoon acknowledged to be true. On the face of it, LaChance had an absolute defense, and it is within the judge’s discretion to deny a motion to add a groundless claim. Ciriello v. Garvey Oldsmobile, 1998 Mass. App. Div. 195, 196 (1998). Moreover, a motion to request removal of the case to the Superior Court before trial and almost two years after the start of the suit because it concerns a matter to which the District Court has no jurisdiction is without merit Muldoon’s remedy would have been to start an action in the Superior Court The trial judge acted properly in denying his motion to amend.
4. The 93A allegation. Muldoon charges LaChance with a 93A violation, namely, the failure to return an overage of money to him after the sale of the press brake. This portion of his appeal fails for several reasons. First Muldoon did not raise this issue as an argument in the lower court and only now, on appeal, urges its consideration. “A theory or issue neither presented nor argued in the trial court can not be argued for the first time on appeal.” Taveras v. Rodriquez, 2000 Mass. App. Div. 39, at 41 (2000); Tammaro v. Haliotis, 1998 Mass. App. Div. 82, at 83 (1998); New England Tec. Sales v. SEEQ Tech., Inc., 1996 Mass. App. Div. 191 (2001) (1996). Compare Commonwealth v. Rosenthal, 52 Mass. App. Ct. 707 (2001) because defendant did not alert the trial judge to a particular argument, the waiver doctrine precludes him from doing so on appeal.) Secondly, the claim of the non-payment of monies, absent an intent to secure benefits for the breaching party to which he is not entitled, is not grounds for a 93A finding. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 475 (1991). Finally, at the time Muldoon made his demand for a return of some of the sale price of the press brake, he had no claim; that is, the figures did not show an overage. There was, in fact, taking into account an offset for legal fees and costs, a deficiency. LaChance was, under the lease and according to the trial judge’s rulings, entitled to reasonable attorney’s fees. The amount would have erased any claim that Muldoon had. Unfortunately for LaChance, even though he had an order for fees, because he did not claim it in his answer or counterclaim, the final order was for “$0.00.” That, however, did not change the amount due or not due at the time that Muldoon made demand of LaChance, which was the time that Muldoon claims that LaChance committed an unfair or deceptive act
Accordingly, for the above reasons, we dismiss the appeal.
So ordered.

 The parties also did not raise any issue as to these facts on this appeal.

 The trial judge’s recitation in his memorandum of the payment as $458.28 and the total as $16,479 we assume to be mere typographical errors.

 These had to do with the requirement of Muldoon to pay a balloon payment and whether LaChance was entitled to use interest on Muldoon’s security deposit to offset a deficiency

 The figures reported to us show that if Muldoon were successful in defeating these charges, he might be entitled to a judgment for the repayment of an overage.